PATENTS SELLING & EXPORTING CO., AKTIESELSKAB, v. DUNN.

(District Court, S. D. New York. January 20, 1913. Supplemental Opinion, February 14, 1913.)

No. 6—240.

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—DUST-EXTRACTING MACHINE.

The Schiodt patent, No. 854,670, for a dust-extracting machine, *held* not anticipated, valid, and infringed as to claims 1, 2, 3, 5, and 10.

2. PATENTS (§ 72*)—ANTICIPATION—STRUCTURES IN DIFFERENT ART.

A chimney for extracting gases from blast furnaces, although it also incidentally extracts dust, is not a dust-extracting machine in any true sense, so as to be an anticipation of a patent for an apparatus for extracting dust from carpets, furniture, etc.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 86–91; Dec. Dig. § 72.*]

In Equity. Suit by the Patents Selling & Exporting Company, Aktieselskab, against Elias B. Dunn, doing business under the name of Dunn's Improved Vacuum Systems, for infringement of letters patent No. 854,670, for an apparatus for extraction of dust from carpets and other articles, granted to F. V. Schiodt on May 21, 1907. On final hearing. Decree for complainant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Timothy D. Merwin, of New York City, for complainant.
Edwin J. Prindle, of New York City, for defendant.

HAND, District Judge. The only issue in the case is the validity of the patent and that depends upon a very limited art. Kenney's two patents, 807,283 and 847,948, are much the nearest references, because they are in the art of dust extracting. · Mr. Prindle very correctly states the exact novelty of Schiodt when he says that it—

"consisted in the idea of running the water and dust through the pump with the air, instead of separating them from the air before allowing the air to go through the pump."

I do not understand that he asserts that this is not enough alone to support a patent, and if he did I should disagree with him about it. Whatever the changes necessary to make over Kenney, 847,948, into Schiodt, they would altogether change the theory on which the machine operated. No one before Schiodt had kept the dust-laden water .continually churned up by the pump, and had sent it through the pump valves and out of the air escape along with the air. Kenney had to effect a substantially complete removal of dust from the air if his machine was to work, while in Schiodt's machine the water washed the pump of itself, even if the air had not lost to the water all its dust. Again, in Schiodt, the washing of the machine was effected as the work proceeded, and it need not be stopped to be cleansed. In Kenney, to open the valve, *41*, would break the vacuum and make the machine inoperable. It could be run only till the water in *32* became too foul for further use. In Schiodt, one has only to set the cock, *X*, in Fig. 4 so that .the flow will be enough for the dustiest places to be cleaned and the machine is operable continuously.

[1] However, Kenney is enough to dispose of claim 9, and also, I think, of claim 11, though that is more doubtful. There remain claims 1, 2, 3, 5, and 10. Of the anticipations, De La Verne, 233,736, although somewhat strikingly similar in structure, is too remote in purpose to be serviceable. Zellweger, 679,587, and Thwaite, 731,395, is each an apparatus for extracting gases and dust from blast furnaces; neither is a "dust-extracting" apparatus in the sense that the patent in suit uses that term, or in the sense that Kenney's machine is such. It is quite true to say that if you go to these patents, especially to Thwaite, you would get suggestions from which you could probably make Schiodt's machine, though the water supply in each appears to be a good deal smaller than Schiodt's required; but to do so you must already have conceived the idea that in a dust-extracting machine it was advisable to carry the liquid and dust through the pump or other extracting means along with the air.

[2] However, a chimney for gases is not a dust-extracting machine in any true sense at all, even when the gas contains dust. Schiodt was concerned with taking dust out of carpets and furniture and the like, by means of as high a vacuum as he could get through a very constricted inlet. The gas—air—was only the medium and means by which the dust was to be removed. Is it not really a perver-

sion of language to call a chimney a dust-extracting machine, because the dust will continue to come up with the gas and so cause trouble? This is a dust-extracting art of quite dissociated and independent purposes and development, practically as remote from chimney construction as it is from hydraulic presses. The usual way in such cases is for every one to improve in detail on what has been done up to that time, and if he adopts a new method and strikes into a new idea, it is irrelevant that in arts not associated a similar problem has been dealt with in a similar way. Once Schiodt thought of carrying everything through the pump, it certainly was not difficult to work out the details, even without Thwaite, and his invention, assuming he made any invention at all, consisted in thinking of that new way. These two patents are relevant only in so far as they would have suggested that way of dealing with the dust and water in such a machine, and for that I think they were too remote.

After all, the required standard of originality is only that of the ordinary skilled artisan. I should be much more willing to say that a good deal of mechanical ingenuity which followed along established lines was within the power of such a one, than to say that he would stop and look to other such arts to see what they suggested. Chimneys do operate by partial vacuum, in a scientific sense; but whoever thinks of them in that way? Thwaite's machine was no doubt more than that; it did pull the air out of the chimney, but the purpose was not to get the dust out of the fire; the dust was an unavoidable incident to the fire, and if any one could have devised a way of keeping it where it was, Thwaite's patent and Zellweger's would have been unnecessary. Therefore it seems to me that it is imputing a good deal more of originality than he has to the everyday artisan, when he is confronted with a dust extractor as Kenney left it, to suppose that a knowledge of the gas chimney art would have been enough for him. I think he would have naturally thought that too far afield from what he had to do with.

As for the question of a "relatively large quantity of liquid," it falls out of the case, since infringement has now been conceded. It has no effect upon validity. I should myself not have regarded Dean, 796,415, as an anticipation, and it is not now urged as one.

The usual decree may pass in claims 1, 2, 3, 5, and 10. No costs.

### Supplemental Opinion.

It now appears that the defendant does not concede infringement in this case, so that the matter must be reheard. The defendant's position is that the words, "a relatively large quantity of liquid sufficient to slime the dust, but insufficient to break the vacuum," must be interpreted in view of Dean's patent, 796,415. Those words, he says, mean the proportion of water to the capacity of the pump cylinder, and that proportion in the case of pumps like Dean is about 36 per cent. of the capacity of the cylinder. So, he says, since the patentee made Dean his standard, no pump can infringe in which the quantity of water in the cylinder is less than say 40 per cent. of the volume of the cylinder. In his case the quantity is about one-tenth of 1 per cent.

Now, in the first place, I should entirely refuse to go into this matter at all, because the words of the claims are perfectly plain in this respect as they stand, whatever the examiner thought about Dean. They mean that enough water shall be sure to get into the cylinder to keep the resulting mixture so liqueous as to pass through the pump without danger of clogging the valves; the capacity of the chamber has nothing whatever to do with the matter. Viscosity was obviously dangerous; it must be avoided. The water inlet must be so large as to admit enough water to avoid this viscosity. This may be a very obvious qualification, and it may be somewhat ambiguous, too; but its ambiguity resides in the fact that the proportion between dust and water will vary. Those are the only two factors which control, and to import into the matter a third factor, the size of the chamber, is wholly without any warrant in the words themselves.

Besides, I do not think that the examiner had any idea that the size of the chamber had anything to do with the matter, though, as I have said, the words are clear, whether he did, or whether he did not. I think the defendant has been misled by too great subtlety. The examiner cited Dean, because he thought it could be used as a dust extractor as it stood. The applicant answered that, although the amount of water injected into the chamber is not shown, it would not be enough to slime the dust which came in with it. He said that his own water inlet was enough to do this, and he got through his patent, apparently on that distinction. So the parties were talking about the liqueousness of the mixture which depends upon the proportion of liquid to dust, and not in the least upon the proportion of the cylinder filled by the mixture. That depends upon the length and rapidity of the pump stroke to the inflow of the mixture, unless there be a separate entrance chamber as in Dean's figures, in which case the size of that also enters.

But the proportion of the cylinder occupied has absolutely nothing to do with what they were talking about, and merely beclouds the issue here. The applicant satisfied the examiner that in the usual condensers of Dean's type the spray was not enough to make a liqueous mixture which would pass through the pump. That was very important to the operation of the pump; but it was not of the least consequence that the mixture should occupy at least a given proportion. It is true that it was of consequence that the mixture should occupy not more than a given proportion, else it would break the vacuum; and the only plausible reason I can see for interpreting this clause as referring to the capacity of the pump is its association with the second clause, "insufficient to break the vacuum," which certainly does refer to capacity. However, while this association might help where the matter was not clear, the form of words used and the obvious reason for their use leaves no doubt of their meaning. It seems to me to be unreasonable to construe them so as to effect a result which could have no possible relation to the operation of the machine and would render infringement so easy.

I am of opinion that infringement was proved.